UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| O-R-C-A, *an adult*,<br><br>    Petitioner,<br><br>    v.<br><br>CAMMILLA WAMSLEY, *Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations*; TODD LYONS, *Acting of Immigration Customs Enforcement*; U.S. IMMIGRATON AND CUSTOMS ENFOCEMENT; KRISTI NOEM, *Secretary of the Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; and PAMELA BONDI, *Attorney General of the United States*,<br><br>    Respondents. | Case No. 6:25-cv-02055-MC<br><br>**ORDER** |

MCSHANE, Judge:

    Respondent Immigration and Customs Enforcement ("ICE") detained Petitioner O-R-C-A on November 4, 2025. The same day, O-R-C-A filed a Petition for Writ of Habeas Corpus. He also filed a Motion for a Temporary Restraining Order ("TRO") requiring his release from custody. Because his re-detention is unlawful, O-R-C-A's Petition for Writ of Habeas Corpus, ECF No. 1, is GRANTED.

Page 1 — ORDER

## BACKGROUND

Petitioner O-R-C-A is a native of Ecuador. Pet. Writ Habeas Corpus ("Pet.") ¶ 1, ECF No.1; Piersoll Decl. ¶ 3, ECF No. 7-1. He fled Ecuador on May 21, 2024, seeking safety in the United States. O-R-C-A Decl. Ex. A, at ¶ 2, ECF No. 9; Piersoll Decl. ¶ 3. Without admitting him, U.S. Border Patrol released O-R-C-A on his own recognizance with a referral to report to ICE for alternatives to detention. Piersoll Decl. ¶ 3.

On May 22, 2024, Border Patrol served O-R-C-A with a Notice to Appear. *Id*. at ¶ 4. Because O-R-C-A had family living in Utah, the Notice directed O-R-C-A to report to immigration court in Salt Lake City on August 26, 2026. *Id*. Border Patrol released O-R-C-A after he signed an Order of Release on Recognizance (OREC). *Id*. O-R-C-A agreed to several conditions of release under the OREC. *Id*. at ¶ 5. Notably, his release conditions did not restrict his ability to travel throughout the United States for work.

In July 2024, O-R-C-A reported to ICE's Office of Enforcement and Removal Operations in Provo, Utah. *Id*. He enrolled in an alternative to detention ("ATD") program. *Id*. O-R-C-A signed a SMARTLink agreement on September 13, 2024 allowing the Government to track his location via his mobile phone. *Id*. The SMARTLink agreement states that a violation of its terms "could result in termination" of O-R-C-A's participation in the ADT program and a "return to detention." Piersoll Decl. Ex. 2, at 2–3. On November 22, 2024, O-R-C-A filed an application for asylum in immigration court. Piersoll Decl. at ¶ 11.

In April 2025, O-R-C-A reported to the ICE office in Medford, Oregon. *Id*. at ¶ 14. He told ICE officials that he relocated to Medford for a work opportunity. *Id*. He later traveled across the United States for work projects. *Id*. a ¶ 17. He regularly informed Respondents about

his location. Piersoll Decl. 4–5. O-R-C-A also volunteers to lead a men's class at his church in Medford. O-R-C-A Decl. ¶ 23.

On November 4, 2025, O-R-C-A traveled cross country to report to the ICE office in Eugene, Oregon for a scheduled check-in. Piersoll Decl. ¶ 24. While there, ICE cancelled his OREC for "failure to comply with the conditions of release." *Id*. Later that same day, ICE transported O-R-C-A outside of the District of Oregon to an ICE detention center in Tacoma, Washington. *Id*. at ¶ 25. Respondents have not provided O-R-C-A any hearings in immigration court. *Id*. at ¶ 29.

On November 25, this Court held oral argument on O-R-C-A's petition and TRO. Mins. Of Proceedings, ECF No. 12. For reasons explained on the record and discussed below, this Court granted O-R-C-A's TRO and his immediate release from custody.

## STANDARD

To obtain habeas relief, Petitioner must prove that his custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241. Courts have "broad discretion" in constructing a remedy in habeas cases. *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

## DISCUSSION

O-R-C-A petitions for a writ of habeas corpus, arguing that Respondents unlawfully detained him. Respondents justify O-R-C-A's detention under 8 U.S.C. § 1225(b)(2) or, in the alternative, 8 U.S.C. § 1226. Mins. of Proceeding, ECF No. 12. As previously held by this Court and the other judges of this District, the detention of a noncitizen already present in the United States under § 1225(b)(2) is unlawful.[1] With regard to a purported detention of O-R-C-A under

---

[1] *See Guzman v. Weiss*, 6:25-cv-012146-MC, ECF No. 12 (this Court discussing how § 1225(b)(2) cannot be justification for detaining a noncitizen already present in the United States who is not seeking admission.). O-R-C-A

Page 3 — ORDER

§ 1226, the Respondents' "shoot first, explain later" approach to detention in this case violates both the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment.

I.   **O-R-C-A's Detention Violates the APA**

O-R-C-A claims Respondents' decision to revoke his parole and re-detain him violates the APA. Pet. 15. Respondents argue ICE considered O-R-C-A's individualized circumstances when deciding to re-detain him. Resp. 8. Respondents initially defended their decision by almost exclusively emphasizing O-R-C-A's interstate travel. *Id.*[2] Respondents later conceded that O-R-C-A's parole conditions did not bar him from leaving his state of residence without advance permission. Opp. TRO Mot. 3. Clearly, prior to his detainment, Respondents had not taken the time to review O-R-C-A's conditions of release. Respondents violated the APA by arbitrarily and capriciously terminating O-R-C-A's parole and re-detaining him without gathering any individualized information to support a detention.

A reviewing court must set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[.]" 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious where the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so

---

was not "seeking admission" when he was detained, as required by § 1225(b)(2). *Id.* Respondents detained O-R-C-A in Eugene, Oregon, which is neither a border city nor port. Piersoll Decl. ¶ 24.

[2] Concerningly, neither declaration provided by Respondents specifically states which condition(s) of his parole O-R-C-A violated. Piersoll Decl. 5 (". . . his OREC was cancelled for failure to comply with the conditions of release."); Weiss Decl. 2 ("[O-R-C-A's OREC] was cancelled for failing to comply with the conditions of his release."). Jeffrey Chan, the ERO Assistant of Field Operations Director for Portland, Eugene, and Medford, authorized the cancellation of O-R-C-A's parole. Weiss Decl. 3. However, Respondents do not submit a declaration from Mr. Chan explaining the basis for terminating the OREC on November 4, 2025. This wraithlike record of Respondents' decision-making undermines their defense. *See Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) ("[A]n agency's action can only survive arbitrary or capricious review where it has articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (citation modified).

implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency action is also arbitrary and capricious if the agency failed to articulate a "rational connection between the facts found and the choice made." *Id*. (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). An agency may not rely on post hoc rationalizations for its actions. *Id*.

In May 2024, Respondents deemed O-R-C-A suitable for conditional parole. Piersoll Decl. 2–3. Respondents provide no rational explanation or change of circumstances to justify departing from their prior decision. Respondents initially claimed that they re-detained O-R-C-A because he violated the terms of his parole by engaging in impermissible interstate travel. Resp. 8. Respondents later conceded that this was *never a condition of his parole*. Opp. TRO Mot. 3. Respondents now solely justify terminating O-R-C-A's parole because he either missed or was late to five biometric check-in appointments. *Id*. at 4. This Court doubts Respondents were even knowledgeable of the terms of O-R-C-A's parole when they detained him.

Section 1226 contemplates revocation of parole when a noncitizen is a danger to the community or risk of flight. Nothing in the record suggests O-R-C-A is either. O-R-C-A has a job and financially supports his family. O-R-C-A Decl. 3. He agreed to allow Respondents to track the location of his mobile phone. Piersoll Decl. Ex. 2, 1, ECF No. 7-2. He attended numerous virtual check-in appointments. Weiss Decl. Ex. 3, 1–10, ECF No. 11-3. Respondents themselves offer a detailed, months-long cataloguing of O-R-C-A's whereabouts across the country based on information O-R-C-A diligently provided to them. Piersoll Decl. 4–5. He was re-detained when he *chose to appear in person* as requested by Respondents. *Id*. The record

shows O-R-C-A is the opposite of a flight risk: he is a person committed to following the conditions of his parole to the best of his abilities.

This Court is unconvinced that O-R-C-A missing or being late to five biometric check-ins prompted Respondents to terminate his parole and detain him. Counsel's post hoc explanations as to why Respondents detained O-R-C-A "cannot substitute for the agency's own articulation of the basis for its decision." *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008). While O-R-C-A may have missed "five biometric check-ins between October 2024 and November 2025[,]" such a minor infraction is hardly a reasonable basis for the Respondents to reverse course and find O-R-C-A a flight risk. Opp. TRO Mot. 4. It is clear that O-R-C-A's missed biometric check-ins are a post hoc rationalization for his detention after Respondents learned that he was not prohibited from traveling interstate without permission.

Respondents do not articulate a satisfactory reason for revoking O-R-C-A's parole and re-detaining him on November 4, 2025. Because it appears Respondents were not even familiar with the conditions of O-R-C-A's release when he was detained, the decision to revoke his parole and detain him was arbitrary and capricious. His detention under § 1226 violates the APA.

## II.     **O-R-C-A's Detention Violates the Due Process Clause**

O-R-C-A alleges that Respondents' revocation of his conditional parole and re-detention without process or reasonable explanation also violates his procedural due process rights under the Fifth Amendment. Pet. 17–18. The Fifth Amendment prohibits deprivations of life, liberty, and property without due process of the law. U.S. Const. Amend. V. The Due Process Clause applies to noncitizens in the United States, including those in removal proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Because Respondents arbitrarily revoked O-R-C-A's parole without sufficient process, his detention is unlawful.

Courts apply the balancing test in *Mathews v. Eldridge* to determine whether a noncitizen's detention violates the Due Process Clause. 424 U.S. 319, 335 (1976); *see E. A. T.-B v. Wamsley*, 795 F.Supp.3d 1316, 1321 (W.D. Wash. Aug. 19, 2025) (listing cases applying *Mathews* to similar immigration detention contexts). Under *Mathews*, a court balances three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335. All three factors weigh in support of O-R-C-A.

### A. O-R-C-A has a substantial private interest in his physical liberty outside of custody.

Freedom from detention "lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. This liberty interest exists even for individuals who have been conditionally released on parole.[3] *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a liberty interest in continued freedom from custody when a parolee "has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."). Respondents released O-R-C-A on parole in May 2024. Piersoll Decl. ¶ 4. This decision created "an implicit promise" that his liberty would be revoked only if he did not follow the conditions of his release. *Morrissey*, 408 U.S. at 483. The first *Mathews* factor weighs strongly in O-R-C-A's favor.

---

[3] The conditionality of O-R-C-A's parole does not diminish his liberty interest. *See Pinchi v. Noem*, No. 5:25-CV-05632-PCP, ---F.Supp.3d ----, ----, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after the individual is released from custody [they have] a protected liberty interest in remaining out of custody") (collecting cases).

**B. Risk of erroneous deprivation is high.**

Respondents have already shown a risk of erroneously depriving O-R-C-A of his liberty in the absence of pre-deprivation procedural safeguards. Civil immigration detention must be reasonably related to the statutorily authorized purposes of preventing danger to the community or flight; detention may not be punitive. *Zadvydas*, 533 U.S. at 690. Respondents do not show that O-R-C-A poses a risk of either concern. As discussed, the record suggests Respondents first detained O-R-C-A and then concocted a post-hoc justification for his custody. A pre-deprivation hearing before a neutral immigration judge would likely have prevented Respondents from unjustifiably detaining O-R-C-A. The second factor weighs in favor of O-R-C-A.

**C. Respondents Have Minimal Interest in Detaining O-R-C-A**

Finally, Respondents offer no legitimate interest in terminating O-R-C-A's conditional parole and detaining him. The Government surely has an interest in administering immigration laws. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982). However, that interest must be in furtherance of the statutory goals Congress intended. "Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." Pinchi, 2025 WL 2084921, at *5. Respondents fail to present any compelling argument depicting O-R-C-A as a flight risk or potential danger to the community—considerations § 1226 contemplates as justification for detainment. Moreover, the cost of keeping O-R-C-A in custody pending removal proceedings would likely far exceed the cost of providing him with a pre-detention hearing. *See Pinchi*, 792 F.Supp.3d at 1036 (calculating a similar cost comparison). The third factor weighs in favor of O-R-C-A as well.

All three *Mathews* factors support O-R-C-A's claim that Respondents deprived him of his liberty without constitutionally sufficient process. Because Respondents violated the Due Process Clause when detaining O-R-C-A after revoking his parole, his detention is unlawful.

## CONCLUSION

Respondents are enjoined from relying on 8 U.S.C. § 1225(b)(2) to detain O-R-C-A. Because Respondents terminated O-R-C-A's parole and detained him in violation of the APA and the Due Process Clause of the Fifth Amendment, his re-detention under § 1226 is unlawful. O-R-C-A's Petition for Writ of Habeas Corpus, ECF No. 1, is GRANTED. This Court orders Respondents to immediately release O-R-C-A under the conditions of his previous parole. O-R-C-A shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation hearing before a neutral decisionmaker, where Respondents have the burden of establishing, by clear and convincing evidence, that O-R-C-A poses a danger to the community or a risk of flight.

**IT IS SO ORDERED.**

DATED this 9th day of December, 2025.

                                                                      /s/ Michael McShane
                                                                       Michael McShane
                                                                United States District Judge